UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUGAAT SHAHI<br>(A-Number: 241-138-486),<br><br>   Petitioner,<br><br>  v.<br><br>KRISTI NOEM, Secretary of the<br>Department of Homeland Security, et al.,<br><br>   Respondents. | No.  1:26-cv-02169-KES-EGC (HC)<br><br>ORDER GRANTING PETITION FOR WRIT<br>OF HABEAS CORPUS AND REQUIRING<br>IMMEDIATE RELEASE<br><br>Doc. 1 |

Petitioner Saugaat Shahi is an immigration detainee proceeding with a petition for writ of habeas corpus and motion for temporary restraining order.  Docs. 1, 11.  For the reasons explained below, the petition for writ of habeas corpus is granted.

**I. Background**

Petitioner is a citizen of Nepal who was detained shortly after he entered the United States on November 29, 2024.  Doc. 7-1, Garibay Decl. at ¶¶ 7–8.  He has remained detained since that date.  *See id.* ¶ 18.  On September 12, 2025, an immigration judge ordered him removed from the United States but granted withholding of removal to Nepal.  *Id.* ¶ 14.  Neither party appealed that decision, so it became final thirty days later, on October 12, 2025.  *See id.*; 8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. § 1003.38(b).

1

According to the declaration of deportation officer Saul A. Garibay, "ICE began the process of having Petitioner removed to a third country" on October 20, 2025.  Doc. 7-1, Garibay Decl. at ¶ 15.  ICE has not identified a third country willing to accept petitioner.  *See* Doc. 7 at 4 ("Respondent acknowledges that ICE has not been able to identify a third country of removal."); Doc. 15 at 2 n.1 ("The undersigned confirmed with ICE officials on July 13, 2026, that there has been no change of status to Petitioner's detention and pending removal to a third country.").

On March 19, 2026, petitioner filed a pro se petition for writ of habeas corpus, challenging his detention under the framework in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  *See* Doc. 1.  Respondents filed a response to the petition, in which they argue that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future because they are seeking to remove petitioner to a third country.  *See* Doc. 7.  Subsequently, on July 8, 2026, petitioner filed a motion for temporary restraining order, *see* Doc. 11, and the Court construed the motion for temporary restraining order as raising a challenge to his removal to a third country under the ICE policy examined in this Court's prior order, *Viengkhone S. v. Albarran*, 817 F. Supp. 3d 901, 907 (E.D. Cal. 2025), *see* Doc. 12.  Respondents filed a response to the motion for temporary restraining order on July 13, 2026.  Doc. 13.  Petitioner subsequently obtained counsel, and his counsel filed a reply addressing the *Zadvydas* issue and the third-country removal issue. *See* Doc. 16.

## II.     Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's

2

habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    Discussion

#### a.  *Zadvydas* Claim

Relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001), petitioner argues that his detention is no longer authorized by 8 U.S.C. § 1231(a)(6), the statute that allows the government to detain a noncitizen who has been ordered removed after the "removal period" has lapsed.  *See* Doc 1.  In *Zadvydas*, the Supreme Court recognized that 8 U.S.C. § 1231(a)(6) would pose a "serious constitutional problem" if it were construed to "permit[] an indefinite . . . deprivation of human liberty[.]" *Zadvydas*, 533 U.S. at 690–92.  The Court therefore read an implicit constitutional limitation into 8 U.S.C. § 1231:  If, six months after being ordered removed, an immigration detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.  Once it has been determined that "there is no significant likelihood of removal in the reasonably foreseeable future[,]" then the government must release the noncitizen. *Id.*

Petitioner has been detained for over nine months since his removal order became final. *See* Doc. 7-1, Garibay Decl. at ¶ 14; 8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. § 1003.38(b).  An immigration judge found that petitioner faced a clear probability of persecution in Nepal and granted withholding of removal.  *See* Doc. 7-1, Ex. 3; *Cardoza-Fonseca v. I.N.S.*, 767 F.2d 1448, 1452 (9th Cir. 1985) (discussing "clear probability" standard for withholding of removal), *aff'd sub nom. I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421 (1987).  ICE therefore cannot remove petitioner to Nepal.  *See* 8 U.S.C. § 1231(b)(3)(A).  While the government may theoretically remove him to a third country, many courts have noted that "third country removal is exceedingly rare." *See, e.g.*, *Danish v. Noem*, No. 2:26-CV-01069-DAD-SCR, 2026 WL 851169, at *1 (E.D. Cal. Mar. 27, 2026); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (discussing study which showed that in 2017 "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country").  Given this, petitioner has provided good

3

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Respondents fail to rebut petitioner's showing.  Respondents assert that ICE has been attempting to remove petitioner to a third country since October 20, 2025.  *See* Doc. 7-1, Garibay Decl. at ¶ 17.  But it has now been over nine months and ICE has not identified a third country willing to accept petitioner.  *See* Doc. 7 at 4 ("Respondent acknowledges that ICE has not been able to identify a third country of removal."); Doc. 15 at 2 n.1 ("The undersigned confirmed with ICE officials on July 13, 2026, that there has been no change of status to Petitioner's detention and pending removal to a third country.").[1]

On this record, the Court finds that there is no significant likelihood of petitioner's removal in the reasonably foreseeable future.  As such, petitioner's detention is no longer authorized by 8 U.S.C. § 1231.

### b.  Third-Country Removal Claim

Petitioner also requests that the Court bar his removal to a third country pursuant to a July 9, 2025 ICE policy regarding third country removals.  *See* Doc. 16 at 8–10.  The policy provides that "[i]f the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures."  *See* ICE Policy Memorandum, *Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025)*, July 9, 2025, available at https://storage.courtlistener.com/recap/gov.uscourts.mad.282404/gov.uscourts.mad.282404.190.1.pdf.  The policy further provides that, "[i]n all other cases," ICE may still remove the noncitizen

---

[1] Respondents seem to argue that they should be entitled to detain petitioner because ICE believes he is a flight risk.  *See* Doc. 7 at 3; Doc. 15 at 2.  However, that "justification—preventing flight—is weak or nonexistent where removal seems a remote possibility at best."  *Zadvydas*, 533 U.S. at 679.  Moreover, the Ninth Circuit has held that once a noncitizen demonstrates that there is no significant likelihood of removal, they must be released "even if such detention were premised on 'protecting the community from dangerous aliens.'"  *Tuan Thai v. Ashcroft*, 366 F.3d 790, 797 (9th Cir. 2004) (quoting *Zadvydas*, 533 U.S. at 697).

to the third country by following certain procedures. *Id.* Those procedures include that "ERO [Enforcement and Removal Operations] will not affirmatively ask whether the alien is afraid of being removed to the country of removal." *Id.* (emphasis in original). If ICE follows this policy, petitioner would not have a meaningful opportunity to present this claim in any court before he is removed.

"The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). The Ninth Circuit has held that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Nguyen v. Scott*, 796 F.Supp.3d 703, 727 (W.D. Wash. 2025) (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)). Other courts in this circuit have recognized that ICE's current policy is unconstitutional, and this Court agrees with the reasoning of those decisions. *See, e.g.*, *Nguyen v. Scott*, 796 F.Supp.3d at 726–33; *Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025).

**IV.     Conclusion and Order**

Accordingly,

1. The petition for writ of habeas corpus is GRANTED.

2. Respondents are ORDERED to release petitioner immediately.

3. Respondents are ENJOINED AND RESTRAINED from removing petitioner to any third country without first providing him with constitutionally compliant procedures, including:

   a. Written notice to petitioner and counsel of the third country to which he may be removed, in a language that petitioner can understand, provided at least 21 days before any such removal;

   b. A meaningful opportunity for petitioner to raise a fear of return for eligibility for

protection under the Convention Against Torture, including a reasonable fear interview before a DHS officer;

    c. If petitioner demonstrates a reasonable fear during the interview, DHS must move to reopen his underlying removal proceedings so that he may apply for relief under the Convention Against Torture; and

    d. If it is found that petitioner does not demonstrate a reasonable fear during the interview, a meaningful opportunity, and a minimum of 15 days, for petitioner to seek to move to reopen his underlying removal proceedings to challenge potential third-country removal.

4. Respondents are ORDERED to provide petitioner with a copy of this Order upon his release.

5. The Clerk of Court is directed to close this case and enter judgment for petitioner. The Clerk is directed to serve California City Detention Center with a copy of this Order.

IT IS SO ORDERED.

Dated:   July 27, 2026

_____
UNITED STATES DISTRICT JUDGE

6